**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Louis Rudisill,<br><br>Plaintiff,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>Defendants. | No. CV-13-01149-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Timothy Paul Olmos' Motion to Intervene in the instant case. (Doc. 126.) Also before the Court is Olmos' Motion for Sanctions Against Defense Counsel Paul Carter. (Doc. 131.) The Court has reviewed Olmos' motions, as well as Defendants' Response to Motion to Intervene (Doc. 126), Plaintiff Rudisill's Opposition to Motion to Intervene by Timothy Paul Olmos (Doc. 128), and Defendant's Motion to Strike Non-Party Olmos's Ex Parte Motion for Sanctions (Doc. 132). The Court will deny Olmos' Motion to Intervene as untimely. Further, Olmos has no standing to request sanctions.

*Procedural History*

On September 13, 2013, Stephen Rudisill filed a *pro se* civil rights complaint against Defendants Charles Ryan, Robert Patton, Therese Schroeder, and Danial Lundberg.[1] (Doc. 1). The complaint alleged Defendants violated Rudisill's Fourteenth Amendment rights by segregating inmates based on race. (Doc. 1 at 10.) After substituting counsel (Doc. 14), Rudisill filed a First Amended Prisoner Civil Rights Complaint on February 4, 2014. (Doc. 19.)  The parties participated in multiple settlement conferences in front of the Honorable Charles R. Pyle on January 30, April 6, June 30, and August 24, 2015. (Doc. 85, 90, 94, 99.)  The parties finally advised the Court they reached a settlement in the action on December 22, 2015. (Doc. 113 at 2.)

On February 5, 2016, the parties entered into an Amended Stipulation for Order ("Stipulation"). (Doc. 119.) The Stipulation denied any allegations made in the complaint, and formulated an intricate program that would "apply to the 10 [Arizona Department of Corrections ("ADC")] complexes: Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, Safford, Tucson, Winslow, and Yuma." (*Id.* 119 at 2.) It also outlined policies and procedures necessary to implement an "Integrated Housing Program" ("IHP"). "The purpose of the IHP is to foster racial equality among inmates by assigning inmates to integrated housing placements, with the intention that doing so will enhance rehabilitation and security interests." (*Id.* at 119.) The Stipulation also agreed to develop and implement a "Nondiscriminatory Employment Program" ("NEP"), again to foster racial equality among inmates by employing them regardless of race, with limited exceptions when racial discrimination is narrowly-tailored to serve a compelling state interest and when race is only one factor in employment selection. (*Id.* at 8-9.) The parties developed a schedule showing estimated dates for the ADC to incorporate the procedures throughout its facilities. (*Id.* at 9.) The IHP and the NEP were to be implemented in all dormitory sex offender units between January 1, 2017 and March 1,

---

[1] Two Defendants took the place of their predecessors and are now included in their representative capacities. Alfred Ramos assumed Therese Schroeder's position, and Panann Days has replaced Danial Lundberg.

2018. (*Id.*)

The Court terminated this case on February 8, 2016. (Doc. 120.)

Subsequently, on December 12, 2016, Timothy Paul Olmos filed the pending Motion to Intervene. (Doc. 126.) In it, Olmos states he is housed in the Huachuca Unit of the ADC, in medium-custody housing for sex offenders. (*Id.* at 2.) He argues that sex offenders incarcerated at ADC facilities cannot work in "premium jobs" in which other similarly-situated inmates may be employed. Olmos claims he has a right to intervene in the instant case because he has an important property interest--his work--that has been violated, and the Court's failure to grant intervention would impair his ability to protect that interest because the existing parties do not adequately represent it. (*Id.* at 1, 3.)

Olmos believes his interest in this case stems from the fact that he and other sex offenders are subject to the terms of the IHP and NEP. (*Id.* at 3.) He claims that since the IHP applies to all inmates, he should be afforded the equal right to work in the "premium jobs", just like other non-sex offender inmates, but because sex offenders are not able to be in lower than medium custody,[2] he is prevented from ever obtaining these higher level jobs. Olmos concludes that this prohibition eliminates incentives to participate in the IHP or NEP, and because there is no incentive, the IHP and NEP cannot "accomplish its goal of total inmate compliance with the IHP." (*Id.* at 3.)

At no point in either his Motion or Reply does Olmos claim that he was discriminated against because of race; merely that his classification based on sex offender status confines him to medium custody, which in turn limits his ability to obtain higher-level employment within the ADC.

***Intervention of Right***

The Court must permit anyone to intervene who claims an interest relating to the . . . transaction that is the subject of the action, and whose interests would be impeded by the disposition of the action. Fed.R.Civ.P. 24(a)(2). But, "[i]t is well settled in this circuit that motions to intervene for substantive reasons—to revisit original settlements—must

---

[2] This classification of sex offenders to medium custody is found in the Arizona Department of Corrections Inmate Classification Order 801. (Doc. 126-1 at 8 of 45.)

be timely." *County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). The question of timeliness is at the sound discretion of the trial court. *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 356, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *United States v. Alisal Water Corp*., 370 F.3d 915, 923 (9th Cir. 2004). "When adjudging the timeliness of substantive motions to intervene, this circuit looks at: 1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the delay." *Air California,* 799 F.2d at 537; *Alaniz,* 572 F.2d 657 at 659. "[P]arties who delay in attempting to intervene, and who end up doing so only after the original parties have reached an acceptable settlement, should not be able, without good reason, to intervene when their intervention may well cause substantial prejudice to the original parties." *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.,* 62 F.3d 1217, 1219 (9th Cir. 1995).

Olmos attempts to intervene almost a year after the parties entered into the Stipulation. Motions to intervene may be found untimely in complicated litigation where the motion was not filed until after settlement. *See e.g., Air California,* 799 F.2d at 538 (intervenor untimely when motion was filed after proposed settlement was reached by parties after five years of negotiations); *Alaniz,* 572 F.2d 657 at 659 (motion to intervene filed approximately two weeks after consent decree approved deemed was untimely); *Tesseyman v. Fisher*, 231 F.2d 583 (9th Cir. 1955) (intervenor's motion was untimely where litigation extended over a year and motion was not filed until after trial). This case took approximately three years to litigate. The parties engaged in four separate settlement conferences and the complex terms of the agreement necessitated revision before the Stipulated Order was finalized (Doc. 114 and Doc. 119).  Renegotiation of this agreement would result in prejudice because a modification of the Stipulation would unravel the original settlement. *See e.g., Empire,* 62 F.3d at 1220. The purpose of the agreement was to protect inmates from racial discrimination, not classifications based on sex offenses.

- 4 -

Further, the classifications Olmos' objects to are not part of the Stipulated Order, rather they are designations included in the ADC's Inmate Classification Order 801. Allowing Olmos' intervention would force the parties to negotiate policies never presented for litigation. In addition, the IHP and NEP programs are already being implemented, and intervention would postpone or eliminate future progress under the Stipulation. Defendants would also suffer prejudice by incurring costs were they required to revamp their housing and employment procedures to accommodate Olmos' sex offender demands.

Additionally, Olmos asserts he was unable to file his motion before because he did not have knowledge that the litigation affected him until the IHP and NEP programs were implemented in the sex offender units. (Doc. 130 at 5.) Olmos' intervention needed to occur when he knew "or ha[d] reason to know that his interests might be adversely affected by the outcome of litigation." *United States v. Alisal Water Corp.,* 370 F.3d 915, 923 (9th Cir. 2004). Although Olmos brought the pending Motion soon after speculating his interest in his job may be affected by the Stipulation, in fact, the Stipulation had no effect on his employment situation. Olmos' ability to achieve a lower custodial classification and a higher level of employment is not affected by implementation of the policies determined in settlement. Absent the Stipulation, Arizona Department of Corrections Department Order 801 would still classify him as a medium custody inmate. In addition, Olmos has not asserted any racial discrimination under the IHP or NEP; he was not prevented from obtaining "premium" employment through any racial classification, only his sex offender status. Therefore, Olmos' asserted interests in his sex offender custody status and employment are not impeded by the disposition of this matter, and despite the purported timeliness of his Motion, he is not entitled to an intervention of right.

The Court finds Olmos' Motion is untimely; it was filed long after the conclusion of the action, the parties would suffer prejudice upon Olmos' intervention, and Olmos has shown no interest that was or will be negatively impacted by the litigation.

***Permissive Intervention***

Apart from an intervention of right, the court may allow a party to intervene if that party has filed a timely claim and "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). A finding of untimeliness defeats not only intervention of right but also permissive intervention. *United States v. Wash.*, 86 F.3d 1499, 1507 (9th Cir. 1996); *United States v. Ore.,* 913 F.2d 576, 589 (9th Cir. 1990).

Finding the Motion untimely, the Court need not address permissive intervention, however, the Court will address the question of whether Olmos' Motion shares a common question of law or fact with the subject of the action.

### *Common Question of Law*

Prison policies which classify individuals by race are subject to strict scrutiny, meaning the policy must be narrowly-tailored to meet a compelling state interest. *Johnson v. California*, 543 U.S. 499, 509, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005); *see Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution . . . . [Prisoners] are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment." (citations omitted)). Unlike racial classifications, however, sex offenders are not a suspect class subject to strict scrutiny, *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001), nor do inmates have a constitutional right to employment while incarcerated. *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). Olmos' classification as a sex offender is not subject to the same level of scrutiny that is implicated in the racial classification subject of the current action. Additionally, Olmos' claim does not assert a constitutional violation based on racial classification, as was litigated in this action. Instead, he raises the issue of whether sex offenders should be permitted to reside in lower security housing in order to be able to qualify for "premium employment." Therefore, the action in this case and Olmos' claims do not share a common issue of law.

### *Common Question of Fact*

Neither do the issues raised by Olmos share a common question of fact. Olmos' Motion discusses sex offender classifications that are included in the ADC's Department Order on Inmate Classifications 801, neither the terms of the Stipulation, nor claims of racial discrimination are argued. Therefore, the facts upon which Olmos presents his claim are separate and distinct. The Stipulation protects him from being discriminated against based on race, not based on his criminal history. Therefore, even if the Court conceded, *arguendo*, that Olmos' Motion was timely, the Court finds his claim does not warrant permissive intervention in the terminated action. Olmos' grievance may have merit, but intervention in this case is not appropriate.

*Motion for Sanctions*

In his second motion, Olmos asks to Court to sanction defense counsel Paul Carter. The Ninth Circuit has granted standing to non-parties to file for sanctions in limited circumstances, specifically when the non-party is an involuntary participant in the litigation. *Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987) (non-parties to suit had standing to request sanctions because they were named in the complaint and filing of complaint caused non-party to acquire attorney's fees). Olmos' situation is not such a circumstance. Olmos may not intervene, and is not a party. Nor has he been drawn into the litigation, for while he is subject to the terms of the IHP and NEP, his grievance, as noted heretofore, is not a result of the current action but an ADC administrative measure separate from the Stipulation. The Court agrees with our sister circuits which affirm that in general, a non-party does not have standing to file a motion for sanctions. *See e.g.*, *New York News v. Kheel*, 972 F.2d 482, 488 (2nd Cir. 1992); *Port Drum v. Umphrey*, 852 F.2d 148, 150 (5th Cir. 1988) ("Rule 11 is designed to regulate proceedings among parties already before the court in a particular case."); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.1 (3d ed. 2004).

Further, the text of the Advisory Committee Notes on Rule 11 supports limiting motions for sanctions to parties.  The Notes for the 1983 amendments state "[a] *party* seeking sanctions should give notice to the court and the offending party" and make explicit the court's authority to impose sanctions on its own motion "in order to overcome

the traditional reluctance of courts to intervene unless requested by one of the *parties*." Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment (emphasis added). The Court will not extend the rule's meaning to allow a non-party, who has been denied intervention, the right to file for sanctions against defense counsel.

Accordingly, IT IS ORDERED:

1. Timothy Olmos' Motion to Intervene (Doc. 126.) is DENIED.
2. Defendant's Motion to Strike Non-Party Olmos's Ex Parte Motion for Sanctions (Doc. 132.) is GRANTED and Olmos' Motion for Sanctions Against Defense Counsel Paul Carter (Doc. 131.) is DENIED. The Clerk of the Court shall strike the Ex Parte Motion for Sanctions (Doc. 131) from the Court docket.
3. The Clerk of Court shall mail a copy of this Order to:

   Timothy Olmos #196384
   ASPC Kingman-Huachuca Unit
   P.O. Box 6639
   Kingman, Arizona 86402

Dated this 6th day of March, 2017.

Honorable Cindy K. Jorgenson
United States District Judge

- 8 -